IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| BRIAN ERKARD, | Civil Action No. |
| Plaintiff, | 2:23-CV-0037-RWS-JCF |
| v. | JURY TRIAL DEMANDED |
| FEDERAL EXPRESS CORPORATION, | |
| Defendant. | |

## COMPLAINT FOR DAMAGES

COMES NOW, Brian Erkard ("Plaintiff" or "Mr. Erkard"), by and through his undersigned counsel, and files this, Complaint for Damages, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Mr. Erkard brings this action for damages, and reasonable attorney fees against Defendant Federal Express Corporation ("FedEx") for violations of his rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 et seq. ("ADA").

1

## JURISDICTION AND VENUE

2.

Mr. Erkard invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, and 42 U.S.C. § 2000e-5(f).

3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, and 42 U.S.C. §2000(e)-5(f), venue is appropriate in this Court.

## ADMINISTRATIVE PROCEDURES

4.

Mr. Erkard has fulfilled all conditions necessary to proceed with this cause of action under the ADA. Mr. Erkard filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 24, 2022; the EEOC issued its Notice of Right to Sue on January 3, 2023.

5.

Mr. Erkard timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## PARTIES

### 6.

Mr. Erkard is a Male citizen of the United States of America and is subject to the jurisdiction of this Court.

### 7.

At all times relevant, FedEx was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

### 8.

At all such times, Mr. Erkard was an "employee" of FedEx as defined under the ADA at 42 U.S.C. § 12111(4). During all times relevant hereto, FedEx had employed fifteen (15) or more employees for the requisite duration under the ADA. FedEx is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).

### 9.

FedEx may be served with process by delivering a copy of the summons and complaint to its Registered Agent, The Corporation Company, located at 106 Colony Park Drive, Ste. 880-b, Cumming, Georgia 30040-2794.

## FACTUAL ALLEGATIONS

### 10.

On or about March 18, 2002, Mr. Erkard began working for FedEx.

11.

On or about September, 18, 2006, Mr. Erkard became a Senior AMT Field Line Maintenance technician for FedEx in Indianapolis, Indiana.

12.

On or about January 19, 2017,  Mr. Erkard became a Senior AMT Field Line Maintenance technician for FedEx in Atlanta, Georgia.

13.

On or about  April 2020, Mr. Erkard filed a complaint with FedEx stating that FedEx treated him differently than Caucasian employees with regards to the enforcement of company policies and required training.

14.

After Mr. Erkard made his April 2020 complaint, FedEx began to target Mr. Erkard by overly monitoring his training more than other employees.

15.

From on or about August 21, 2021 to  October 18, 2021, Mr. Erkard had COVID-19 with double pneumonia and was on short-term disability leave from his position with FedEx pursuant to the Family and Medical Leave Act ("FMLA").

16.

On or about October 19, 2021, Mr. Erkard returned to work from his FMLA leave.

17.

On or about October 19, 2021, FedEx instructed Mr. Erkard to "try to get your training caught up as soon as you can."

18.

On or about November 1, 2021, FedEx informed Mr. Erkard that he caught up on his training and only had two (2) more trainings to complete.

19.

On or about December 6, 2021, Mr. Erkard informed FedEx that he was not comfortable completing the run and taxi training and asked that the training be removed from his training record. Mr. Erkard further explained to FedEx that his reflexes where not sharp enough at the time to perform the run and taxi skills.

20.

On or about December 9, 2021, FedEx provided Mr. Erkard with an Accommodation Request Form to complete for his request to amend his training.

21.

On or about December 24, 2021, Mr. Erkard submitted his completed Accommodation Request Form to FedEx.

22.

Mr. Erkard's Accommodation Request Form stated that he had high blood pressure, diabetes, and anxiety attacks, which prevented him from completing high

stress functions such as the run and taxi training.  Mr. Erkard also stated that he "did not want to put anyone at risk" and that he was asking for a "temporary suspension" of his run and taxi training.

### 23.

On or about December 28, 2021, FedEx notified Mr. Erkard that his accommodation request was not approved.

### 24.

On or about December 31, 2021, FedEx told Mr. Erkard that since his accommodation request was denied he had to complete his expired run and taxi training with a DME trainer.

### 25.

On or about January 2, 2022, Mr. Erkard informed the DME trainer that he had anxiety issues which could result in a panic attack during the run and taxi training. Mr. Erkard did not complete the run and taxi training with the DME trainer.

### 26.

On or about January 10, 2022, FedEx issued Mr. Erkard a Performance Reminder for not completing the run and taxi training.

27.

On or about January 10, 2022, FedEx asked Mr. Erkard to fax over medical documents to support his request for accommodation.

28.

On or about January 14, 2022, Mr. Erkard filed a complaint with FedEx for the Performance Reminder he received for not completing the run and taxi training.

29.

On or about January 27, 2022, FedEx notified Mr. Erkard that the decision to issue him a Performance Reminder for not completing the run and taxi training was upheld.

30.

From on or about January 31, 2022 to on or about February 27, 2022, Charles Scott, M.D. ("Dr. Scott"), Mr. Erkard's primary physician, placed Mr. Erkard on short-term disability leave from work due to Mr. Erkard's cardiac issues.

31.

On or about February 3, 2022, Dr. Scott emailed FedEx expressing his concern for Mr. Erkard's health and stress levels. Dr. Scott also asked FedEx if they could decrease Mr. Erkard's stress level at work.

32.

On or about February 10, 2022, FedEx reassessed the complaint Mr. Erkard filed for the Performance Review he received and again upheld the decision to issue Mr. Erkard the Performance Review for not completing the run and taxi training.

33.

On or about March 2, 2022, FedEx informed Mr. Erkard that "[m]anagement does not support your request for an exemption from the Taxi Runway Certification."

34.

On  or about March 4, 2022, FedEx told Mr. Erkard to complete his 757 and Airbus run and taxi training courses by March 14, 2022.

35.

On or about March 14, 2022, Mr. Erkard completed the run training for the 757 and Airbus but did not complete the taxi training for the aircrafts.

36.

On or about March 18, 2022, FedEx issued Mr. Erkard a Warning Letter for Mr. Erkard's failure to notify FedEx that he was not going to complete the taxi training. FedEx's Warning Letter to Mr. Erkard also directed Mr. Erkard to complete the taxi training by March 21, 2022.

37.

On or about March 18, 2022, Dr. Scott informed FedEx that Mr. Erkard should not be taxing aircrafts due to the risks associated with Mr. Erkard's cardiac and blood pressure issues.

38.

On or about March 21, 2022, Mr. Erkard filed a complaint with FedEx for the Warning Letter he received for not completing the taxi training.

39.

On or about March 31, 2022, FedEx informed Mr. Erkard that no further disciplinary action would be taken against him for not completing the taxi certification and  training until FedEx reviewed and made a final decision on his accommodation request.

40.

On or about April 1, 2022, Dr. Scott provided FedEx certified medical documents for Mr. Erkard stating that Mr. Erkard had coronary artery disease, hypertension, and generalized anxiety disorder.

41.

On or about April 11, 2022, FedEx asked Dr. Scott how long Mr. Erkard would need an accommodation from the taxi certification and training and what job duties Mr. Erkard could perform under his current health condition.

42.

On or about April 15, 2022, Dr. Scott informed FedEx that Mr. Erkard may need an accommodation from the taxi certification and training upwards to ninety (90) days and that it was within Mr. Erkard's discretion as to what tasks he felt comfortable performing.

43.

On or about April 25, 2022, FedEx made a final review of Mr. Erkard's accommodation request for the taxi certification and training due to his medical conditions.

44.

On or about April 27, 2022, FedEx informed Mr. Erkard that it denied his request for an accommodation for the taxi certification and training.

45.

On or about May 6, 2022, FedEx issued Mr. Erkard a Warning/Termination Letter for failure to work as directed and insubordination.

46.

On or about May 10, 2022, Mr. Erkard filed a complaint with FedEx for the Warning/Termination Letter he received.

47.

On or about May 26, 2022, FedEx informed Mr. Erkard that the decision to issue Mr. Erkard a Warning/Termination Letter was upheld.

48.

On or about July 3, 2022, Mr. Erkard filed a second complaint with FedEx for the Warning/Termination Letter he received.

49.

On or about July 25, 2022, FedEx informed Mr. Erkard that its Appeals Board upheld the decision to issue Mr. Erkard a Warning/Termination Letter.

50.

Although FedEx purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text. Mr. Erkard was an individual with a disability, as defined by the Americans with Disabilities Act, as amended.

51.

Mr. Erkard requested a reasonable accommodation for his disabilities.

52.

Specifically, Mr. Erkard requested an exemption from his taxi certification and training.

53.

FedEx failed to engage in the interactive process with Mr. Erkard, even though doing so would not have been an undue hardship.

54.

FedEx terminated Mr. Erkard because it had a record of his disabilities and/or because it regarded Mr. Erkard as disabled and/or because Mr. Erkard engaged in protective activity.

55.

But for Mr. Erkard's disability status and/or request for a reasonable accommodation of the same, Mr. Erkard would not have suffered the adverse employment action.

56.

Mr. Erkard was treated less favorably in the terms or conditions of employment than others outside of his protected class, i.e. non-disabled employees and/or employees who did not request a reasonable accommodation for a disability.

57.

FedEx does not require all its maintenance technicians to maintain taxi certification.

58.

There are at least two (2) Senior Maintenance Technicians for FedEx that are not disabled and/or did not make an accomodation request for a disability that are not required by FedEx to complete the taxi certification and training.

59.

Taxing airplanes is not an essential function of a FedEx Senior Maintenance Technician.

60.

FedEx informed at least one (1) of its maintenance technicians that they did not have to get their taxi certification because FedEx had enough technicians that were taxi certified.

61.

FedEx only has one to two airplanes a year that need to be taxied by a maintenance technician.

62.

Mr. Erkard's accommodation request would not have placed an undue burden on FedEx.

## CLAIMS FOR RELIEF

## COUNT I:  FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

63.

Mr. Erkard re-alleges paragraphs 10-62 as if set forth fully herein.

64.

Mr. Erkard had physical and mental impairments which substantially limit one or more major life activities including but not limited to moving, breathing, concentrating, and working.

65.

Mr. Erkard's physical and mental impairments are a "disability" within the meaning of the ADA, as amended.

66.

FedEx was aware of Mr. Erkard's disabilities.

67.

At all times relevant to this action, Mr. Erkard was a qualified individual with known or perceived disabilities  as defined in the ADA.

68.

Mr. Erkard could have performed the essential functions of his job with a reasonable accommodation.

69.

Mr. Erkard requested that FedEx accommodate his disability by temporarily suspending his taxi certification and training.

70.

Upon receiving Mr. Erkard's request for an accommodation, FedEx failed to meaningfully engage in the interactive process with Mr. Erkard regarding his request for a reasonable accommodation of his disabilities.

71.

FedEx refused to provide Mr. Erkard with reasonable accommodations, even though to do so would not impose an undue hardship.

72.

By refusing to accommodate Mr. Erkard, FedEx violated the ADA, as amended.

73.

FedEx has willfully and wantonly disregarded Mr. Erkard's rights, and FedEx's failure to accommodate Mr. Erkard's disability was undertaken in bad faith.

74.

The effect of the conduct complained of herein has been to deprive Mr. Erkard of equal employment opportunity and has otherwise adversely affected his status as an employee because of his disabilities.

75.

As a direct and proximate result FedEx's violation of the ADA, Mr. Erkard has been made the victim of acts that have adversely affected his psychological and physical well-being.

76.

As a result of FedEx's discriminatory actions against Mr. Erkard, he has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

77.

Pursuant to the ADA, as amended, Mr. Erkard is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

78.

FedEx discriminated against Mr. Erkard, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Mr. Erkard of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Mr. Erkard.

79.

Mr. Erkard thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT II:  RETALIATION IN VIOLATION OF THE ADA, AS AMENDED

80.

Mr. Erkard re-alleges paragraphs 10-62 as if set forth fully herein.

81.

Mr. Erkard has physical impairments which substantially limit one or more major life activities including but not limited to moving, breathing, concentrating, and working.

82.

Mr. Erkard's physical and mental impairments are a "disability" within the meaning of the ADA, as amended.

83.

FedEx was aware of Mr. Erkard's disabilities.

84.

At all times relevant to this action, Mr. Erkard was a qualified individual with a known or perceived disability as defined in the ADA.

85.

FedEx terminated Mr. Erkard for requesting an accommodation for his disabilities and/or perceived disabilities.

86.

Mr. Erkard's request for an accommodation of his disabilities and/or perceived disabilities constitutes protected conduct under the ADA, as amended.

87.

FedEx retaliated against Mr. Erkard by terminating his employment on the basis of his request for an accommodation.

88.

FedEx terminated Mr. Erkard's employment within a close temporal proximity to Mr. Erkard's accommodation request.

89.

FedEx's proffered reasons for terminating Mr. Erkard's employment are a pretext designed to hide FedEx's retaliatory motive.

90.

FedEx's retaliatory actions against Mr. Erkard were in violation of the ADA, as amended.

91.

FedEx willfully and wantonly disregarded Mr. Erkard's rights, and FedEx's retaliation against Mr. Erkard was undertaken in bad faith.

92.

As a result of FedEx's retaliatory actions against Mr. Erkard, he has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

93.

Pursuant to the ADA, as amended, Mr. Erkard is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

94.

FedEx discriminated against Mr. Erkard, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Mr. Erkard of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Mr. Erkard.

95.

Mr. Erkard thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Erkard prays for judgment as follows:

(a) General damages for mental and emotional suffering caused by FedEx's misconduct;

(b) Punitive damages based on FedEx's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d) Reasonable attorney's fees and expenses of litigation;

(e) Trial by jury as to all issues;

(f) Prejudgment interest at the rate allowed by law;

(g) Declaratory relief to the effect that FedEx has violated Mr. Erkard's statutory rights;

(h) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting FedEx from further unlawful conduct of the type described herein; and

(i) All other relief to which  may be entitled.

**[SIGNATURE BLOCK ON NEXT PAGE]**

Respectfully submitted this 28th day of February 2023.

**BARRETT & FARAHANY**

Ianna O. Richardson
Georgia Bar No. 655153
Benjamin J. Rollins
Georgia Bar No. 613751

*Attorneys for Plaintiff Brian Erkard*

P.O. Box 530092
Atlanta, Georgia 30353
(404) 214-0120
ianna@justiceatwork.com
benjamin@justiceatwork.com